IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GIUSEPPE BURLANDO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 1992 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| DOMINICK GERACI, SAMUEL ) | |
| MACALUSO, JEFFORY TEAGUE, ) | |
| URBAN SERVICES ENTERPRISES, LLC, ) | |
| and FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, as Receiver for ) | |
| NATIONAL BANK OF COMMERCE, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Giuseppe Burlando filed a fourteen-count complaint[1] against Dominick Geraci, Samuel Macaluso, Jeffory Teague, Urban Services Enterprises, LLC ("USE") (collectively, "defendants"), and the Federal Deposit Insurance Corporation ("FDIC"),[2] as Receiver for National Bank of Commerce ("NBC"), arising from Geraci's alleged plan to divest Burlando of his interest in their limited liability company, Thalia LLC ("Thalia"), and effectively gain full control of the company and its assets. In Counts I & II, Burlando asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified 18 U.S.C. § 1961 *et.*

---

[1] Count I alleges a claim against Geraci and Macaluso for violating RICO. Count II alleges a claim against Geraci, Macaluso, Teague, and USE for conspiracy to violate RICO. The remaining claims are state law causes of action, specifically breach of fiduciary duty against Geraci (Count III); conversion against Geraci (Count IV); common law fraud against Geraci (Count V); tortious interference with contractual relations and tortious interference with prospective economic advantage against Geraci (Counts VI and VII); trespass to personal property against Geraci (Count VIII); unjust enrichment against Geraci (Count IX); breach of contract against Geraci (Count X); equitable accounting against Geraci (Count XI); aiding and abetting breach of fiduciary duty against Teague and Macaluso (Count XII and XIII); and common law conspiracy against Geraci, Macaluso, Teague and USE (Count XIV).

[2] The FDIC was dismissed as a party to this suit with prejudice on June 18, 2010. (Docket No. 97.)

1

*seq.*, which coupled with 28 U.S.C. §§ 1331, 1367, form the basis for federal jurisdiction. Defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, under Rule 17(a).[3] For the following reasons, their motions [64, 67, & 69] are granted.

**BACKGROUND**

In April 2003, Burlando formed Thalia, a limited liability company based in Illinois, for the purpose of purchasing, owning, and improving Thalia Hall. Thalia Hall is a famous Chicago building located at 1225 West 18th Street, and includes a classical theater, retail space, and apartments. Thalia purchased Thalia Hall in July 2003 for $1.1 million and began renovating it the same year. At the time of purchase, Burlando controlled a 100% interest in the theater portion of Thalia Hall ("Class B shares") and a 50% interest in the retail and apartment spaces ("Class A shares"). Burlando's business partners, Spencer Volk and Kevin Berg, controlled the remaining 50% of the Class A shares.

In August 2004, Volk and Berg sold their interest to Geraci, who acquired 50% of the Class A shares, became a joint venture partner with Burlando, and agreed to carry on Thalia alongside him. Subsequent to their agreement, however, Burlando alleges that, "From at least the time Geraci acquired his interest in Thalia, he began to implement a plan to obtain Burlando's interests in Thalia, and to gain full control of Thalia and its assets." Compl. ¶ 20.

Over the next three years, Burlando alleges that Geraci implemented this plan, both on his own and with help from Macaluso, Teague, USE, and NBC. According to Burlando, Geraci extorted a portion of Burlando's Class B shares in Thalia, filed false police reports, and

---

[3] Geraci and USE filed a motion to dismiss at Docket No. 64; Macaluso filed a motion to dismiss at Docket No. 67; and Teague filed a motion to dismiss at Docket No. 69.

misappropriated property that rightfully belonged to Thalia, including bank funds deposited at NBC, equipment, and an investment tax credit for the Thalia Hall project. Burlando also alleges that Geraci collaborated with Macaluso, who owned and shared a financial interest in other entities Geraci owned, to fraudulently prepare tax returns for Thalia. Further, Burlando alleges that Geraci and Teague, a bank officer at NBC who assisted Geraci with withdrawing Thalia funds without Burlando's consent or knowledge, worked together to drive Thalia Hall into bankruptcy.

Specifically, Burlando alleges that in or around June 2006, "Geraci conceived a scheme to obtain Thalia Hall through a foreclosure by NBC" and planned to purchase the property "at a price far below its actual market value." *Id*. ¶ 58. To do so, Geraci allegedly took numerous steps to interfere with the Thalia Hall renovation, including shouting expletives at prospective tenants, falsely advertising defects in the property, and firing contractors. In 2007, while a foreclosure proceeding was ongoing, Burlando alleges that Geraci collaborated with NBC and Teague to obtain a $3.2 million loan to purchase Thalia Hall when it went up for sale at a judicial foreclosure auction. In October 2007, USE, a company controlled by Geraci, placed the winning bid and purchased Thalia Hall for $3.2 million with financing from NBC. Burlando alleges that the market value at the time was "not less than $5 million." *Id*. ¶ 78. Although Burlando acknowledges that Geraci succeeded in carrying out his alleged plan, he further alleges that "Geraci and Macaluso's criminal activity and misconduct has impacted interstate commerce, has continued over a number of years and, without court intervention, will likely continue indefinitely." *Id*. ¶ 88.

On September 10, 2009, Burlando filed his Second Amended Complaint ("complaint") against Geraci, Macaluso, Teague, USE, and the FDIC, alleging a violation of RICO, conspiracy

to violate RICO, and numerous state law claims. On June 18, 2010, the FDIC was dismissed as a party to this suit with prejudice.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## DISCUSSION

**I.    RICO Violation**

To state a civil RICO claim under 18 U.S.C. § 1961 *et. seq.*, Burlando must allege that Geraci and Macaluso engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gamboa* v. *Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (citing *Sedima, S.P.R.L.* v. *Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)). Geraci and Macaluso both move to dismiss Burlando's RICO claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Burlando has not and cannot satisfy the third element of his claim.

To allege a pattern of racketeering activity, "the alleged acts of wrongdoing must not only be related, but . . . must 'amount to or pose a threat of continued criminal activity.'" *Id.* (quoting *Corley* v. *Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1002 (7th Cir. 2004)). This continuity requirement is the only element at issue and can be satisfied by either a close-ended or open-ended period of conduct. *Roger Whitmore's Auto. Servs., Inc.* v. *Lake County*, 424 F.3d 659, 672 (7th Cir. 2005) (citing *H.J. Inc.* v. *N.W. Bell Tel. Co.*, 492 U.S. 229, 237, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)). Because Burlando's allegations amount to a closed period of continuity involving "a course of criminal conduct that has ended," *id*., he must show that Geraci and Macaluso's activity "existed for such an extended period of time that a threat of future harm is implicit." *Id*. at 673.

Burlando has failed to allege sufficient facts showing an implicit threat of future harm. His complaint alleges that, "From at least the time Geraci acquired his interest in Thalia, he began to implement a plan to obtain Burlando's interests in Thalia, and to gain full control of Thalia and its assets." Compl. ¶ 20. Further, Burlando alleges that in or around June 2006, "Geraci conceived a scheme to obtain Thalia Hall through a foreclosure by NBC" and planned to purchase the property "at a price far below its actual market value." *Id.* ¶ 58. Burlando then alleges that Geraci purchased Thalia Hall for $3.2 million at a judicial foreclosure auction, when the market value at the time was "not less than $5 million." *Id*. ¶ 78.

Thus, Burlando has alleged a close-ended scheme, which ended when Geraci divested Burlando of his interest in Thalia and acquired complete control of the company and its assets, specifically the Thalia Hall property. *See Gamboa*, 457 F.3d at 706 ("[I]solated instances of criminal behavior, not presenting at least some threat of future harm, cannot meet . . . [the] continuity element."). Burlando's only allegation implying a threat of future harm is an

5

assertion that "Geraci and Macaluso's criminal activity and misconduct has impacted interstate commerce, has continued over a number of years and, without court intervention, will likely continue indefinitely." *Id.* ¶ 88. This will not suffice. Congress did not intend for RICO to "federalize[] every state common-law cause of action available to remedy business deals gone sour," *Midwest Grinding Co.* v. *Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992), and only intended to target "long-term criminal conduct." *U.S. Textiles, Inc.* v. *Anheuser-Busch Cos.*, 911 F.2d 1261, 1267 (7th Cir. 1990) (citation omitted) (internal quotation marks omitted). Thus, as the Seventh Circuit has explained

> [W]hen . . . a complaint explicitly presents a distinct and non-reoccurring scheme with a built-in termination point and provides no indication that the perpetrators have engaged or will engage in similar misconduct, the complaint does not sufficiently allege continuity . . . even if the purported scheme takes several years to unfold, involves a variety of criminal acts, and targets more than one victim.

*Gamboa*, 457 F.3d at 709 (absence of continuity defeated plaintiff's RICO claim, where alleged wrongdoing was "a one-time endeavor to wreak havoc upon all matters linked to a single murder investigation."). Accordingly, Count I will be dismissed with prejudice against Geraci and Macaluso.

## II. Conspiracy to Violate RICO

In Count II, Burlando alleges that Geraci, Macaluso, Teague, and USE conspired to violate RICO. "[F]ailure to make out a substantive RICO claim requires dismissal of a conspiracy claim based on the same nucleus of operative fact." *Meier* v. *Musburger*, 588 F. Supp. 2d 883, 911 (N.D. Ill. 2008); *see also Stachon* v. *United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000) ("Since Appellants fail to establish a violation of section 1962(c), their section 1962(d) claim based on the same facts must fail as well."). Burlando's conspiracy claim

is premised on the allegation that "Each conspirator agreed to maintain an interest in, or participate in, the affairs of Thalia through a pattern of racketeering activity," *id.* ¶ 93, and realleges Paragraphs 1 through 74 of his complaint in support of this claim. Thus, Burlando's RICO conspiracy claim is based on the same nucleus of operative fact as his substantive RICO claim. Accordingly, Count II will also be dismissed with prejudice against Geraci, Macaluso, Teague, and USE.

Since all federal claims will be dismissed, the court will exercise its discretion to decline supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999) ("It is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). Accordingly, Counts III through XIV will be dismissed for lack of jurisdiction.

## **CONCLUSION AND ORDER**

For the foregoing reasons, the defendants' motions to dismiss [64, 67, & 69] are granted. Burlando's substantive RICO claim (Count I) and RICO conspiracy claim (Count II) are dismissed with prejudice, and his remaining claims (Counts III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, and XIV) are dismissed for lack of jurisdiction. The case is terminated.

Dated: July 21, 2010         Enter: _____
                                    JOAN HUMPHREY LEFKOW
                                    United States District Judge